UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| Aris Ross, individually and on behalf of all others similarly situated,<br><br>         Plaintiff,<br><br>     - against -<br><br>Ralph Lauren Corporation,<br><br>         Defendant | Case No. 6:21-cv-01295<br><br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1. Ralph Lauren Corporation ("defendant") manufactures, markets, labels, and sells various types of shirts purporting to be "Pima Cotton" and/or "100% Pima Cotton," (the "Representations") under the Polo Ralph Lauren brand ("Product").

I. **IDENTIFYING FIBERS**

2. Accurate disclosure of clothing's fiber composition is required under the Textile Fiber Products Identification Act ("Textile Act"), 15 U.S.C. §§ 70, *et seq.*, and its accompanying regulations. 16 C.F.R. Part 303.

3. The main criteria to identify the type of cotton or other fiber is the fiber length.

4. The length of cotton fiber affects its qualities and price – the longer the cotton fiber, the stronger, softer, and more durable the resulting fabric.

5. This creates incentives for manufacturers to mix cotton byproducts and shorter fiber cotton with Pima cotton to gain additional profits at the expense of consumers.

6. However, the "Single-Fiber-Test" adopted by ASTM, a global standards body, can

1

determine the length and length distribution of manufactured staple fibers in clothing.[1]

7. Pima cotton (*Gossypium barbadense L*), an extra-long staple ("ELS") barbadenses, is between approximately 1.2 and 1.44 inches.[2]

## II. THE PRODUCT CONTAINS LESS PIMA COTTON THAN PROMISED

8. Plaintiff purchased a shirt labeled as being made of Pima cotton for approximately forty dollars ($40), plus tax, at the Polo Ralph Lauren Children's Factory Store, Orlando International Premium Outlets, 4969 International Dr Ste 3E01A, Orlando, FL 32819.

9. The product was identified as Pima cotton and/or "100% Pima Cotton."

10. Laboratory analysis performed of substantially similar products to what plaintiff purchased, in accordance with the ASTM D5103 standard, revealed that between most and all fibers were shorter than 1.200 inches (30.48 mm) and shorter than 1.080 inches (27.432 mm), below the range for Pima cotton.

11. Even where an adjustment is made to the fiber lengths by assuming a twenty-five (25) percent reduction, only c. fifty percent of the fibers fall under the Pima classification.

12. These laboratory results support the strong inference that the Product is not made entirely from Pima cotton, but mainly from less expensive shorter cotton fibers and/or cotton byproduct fibers.

13. No reasonable consumer will expect that clothing advertised as containing "100% Pima Cotton" or "Pima Cotton" would contain significantly less Pima cotton than promised.

---

[1] D5103.
[2] ASTM International, D7641, Standard Guide for Textile Fibers.

### III. CONCLUSION

14. Reasonable consumers must and do rely on a company to honestly identify and describe the components and features of what they buy.

15. The value of the Product that plaintiff purchased was materially less than its value as represented by defendant.

16. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

17. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

18. The Product plaintiff bought was sold for a price premium compared to other similar products, approximately $40.00 per shirt, a higher price than it would otherwise be sold for, absent the misleading representations and omissions.

<u>Jurisdiction and Venue</u>

19. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

20. Defendant has been selling products labeled as Pima cotton within Florida for at least seven years.

21. Based on defendant's public financial disclosures, its revenue in 2020 in North America was approximately $2 billion.

22. The population of the countries comprising North America is 597 million.

23. The population of the United States is 321 million, or 54% of the North American population.

24. This means that for 2020, defendant's revenues in the United States were roughly $1.08 billion.

25. Florida's population is approximately six percent of the United States, which means defendant's 2020 revenue from Florida was approximately $69 million.

26. Over the four-year statute of limitations for fraud, the total revenue would be $276 million.

27. To establish the amount-in-controversy of $5 million, defendant's products advertised as containing Pima cotton need only represent 1.8% of all its merchandise.[3]

28. Defendant's sale of products advertised as containing Pima cotton is estimated to be at least five percent and rapidly growing, which exceed the jurisdictional threshold.

29. The Pima cotton products are sold at hundreds of retail and outlet locations, at stores owned by defendant, and third-parties.

30. Plaintiff Aris Ross is a citizen of Florida.

31. Defendant Ralph Lauren Corporation is a Delaware corporation with a principal place of business in New York, New York County, New York.

32. The parties are citizens of different states.

33. Venue is proper because plaintiff resides in this district and the events giving rise to the present claims occurred in this district.

## Parties

34. Plaintiff Aris Ross is a citizen of Orlando, Orange County, Florida.

35. Defendant Ralph Lauren Corporation, is a Delaware corporation with a principal place of business in New York, New York, New York County.

36. Defendant is one of the largest sellers of clothing in the world.

37. Defendant's products are sold from its own stores and outlets, third-parties such as

---

[3] $5 million divided by $276 million.

4

Macy's, and available online.

38.    Defendant's brand is synonymous with the highest quality, so that consumers trust the Representations.

39.    Manufacturers of textile products, like Defendant, must maintain records sufficient to substantiate the claims on its fiber content tags and labels. See *id*. at §70d.

40.    Any guarantee of fiber content by a supplier is insufficient for Defendant to rely on when selling clothing to the public. See 16 C.F.R. § 303.39.

41.    Plaintiff bought the Product for approximately forty dollars ($40), plus tax, at the Polo Ralph Lauren Children's Factory Store, Orlando International Premium Outlets, 4969 International Dr Ste 3E01A, Orlando, FL 32819, in or around the second half of 2020.

42.    Plaintiff seeks to purchase clothing which contains higher quality cotton and fabrics which are more compatible with sensitive skin.

43.    Plaintiff sought to purchase a product that contained a substantial amount of Pima cotton and/or the amount of Pima cotton promised on the label, instead of a significant amount and/or percentage less.

44.    Defendant's false, deceptive, and misleading claim about Pima cotton, and/or its percentage in the Product, violates the Textile Act and the FTC Act.

45.    Defendant did not disclose accurate and truthful fiber content tags on its Pima cotton products, or on its labeling, and upon information and belief, failed to maintain required records substantiating the fiber content of the Products at each stage of the manufacturing process.

46.    Plaintiff did not, nor could be expected to know, that the Product's Pima cotton content and/or percentage differed significantly from the labeling.

47.    Plaintiff would not have purchased the Product if she knew the representations were

false and misleading.

48. Plaintiff chose between Defendant's Product and other similar products which were represented similarly, but which did not misrepresent their attributes and/or lower-priced products which did not make the claims made by Defendant.

49. The Product was worth less than what Plaintiff paid and she would not have paid as much absent Defendant's false and misleading statements and omissions.

50. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's representations are consistent with its composition.

## Class Allegations

51. The class will consist of all Florida residents and all persons who purchased the Product within Florida during the statutes of limitations for each cause of action alleged.

52. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

53. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

54. Plaintiff is an adequate representative because her interests do not conflict with other members.

55. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

56. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

57. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

58. Plaintiff seeks class-wide injunctive relief because the practices continue.

Florida Deceptive and Unfair Trade Practices Act
("FDUTPA") § 501.201 et seq

(Consumer Protection Statute)

59. Plaintiff incorporates by reference all preceding paragraphs.

60. Plaintiff and class members desired to purchase a shirt that contained more Pima cotton than it did.

61. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

62. Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

63. Plaintiff relied on the representations.

64. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Breaches of Express Warranty,
Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

65. The Product was manufactured, labeled and sold by defendant and expressly and impliedly warranted to plaintiff and class members that it contained more Pima cotton than it did.

66. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

67. This duty is based on Defendant's outsized role in the market for this type of Product.

68. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers, and their employees.

69. Defendant received notice and should have been aware of these issues due to

complaints by regulators, competitors, and consumers, to its main offices.

70. The Product did not conform to its affirmations of fact and promises due to defendant's actions and was not merchantable because it was not fit to pass in the trade as advertised.

71. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Negligent Misrepresentation

72. Defendant had a duty to truthfully represent the Product, which it breached.

73. This duty is based on defendant's position, holding itself out as having special knowledge and experience this area.

74. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant.

75. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

76. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Fraud

77. Defendant misrepresented and/or omitted the attributes and qualities of the Product.

78. Because Defendant controls the Product's manufacturing, labeling, sales, and marketing, it possesses specialized knowledge regarding its content and is in a superior position to learn about it.

79. Moreover, the records defendant is required to maintain provide it with actual and/or constructive knowledge of the falsity of the representations.

80. Thus, Defendant knew, or should have known, or was willfully ignorant of the fact that the representations were false, deceptive, and misleading.

81. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

## Unjust Enrichment

82. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory damages pursuant to any statutory claims and

interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated: August 12, 2021

Respectfully submitted,

Law Offices of Howard W. Rubenstein

/s/ Joel Oster

Joel Oster
Of Counsel
22052 W. 66th St #192
Shawnee KS 66226
Tel: (913) 206-7575
joel@joelosterlaw.com

Spencer Sheehan*
Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 409
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com

*Pro Hac Vice Application to be Submitted